## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| DERRICK JARVIS, | ) | **COMPLAINT** |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Case No: 6:24-cv-571 |
| IQ DATA INTERNATIONAL, INC. | ) | |
| | ) | |
| & | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| MILITARY STAR | ) | |
| | ) | |
| & | ) | |
| | ) | |
| EQUIFAX INFORMATION SERVICES, LLC | ) | |
| | ) | |
| & | ) | |
| | ) | |
| EXPERIAN INFORMATION SOLUTIONS, INC. | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

### COMPLAINT AND JURY DEMAND

COMES NOW, Plaintiff Derrick Jarvis, by and through the undersigned counsel, and for his Complaint against Defendants IQ Data International, Inc. ("IQD"), Military Star ("MS"), Equifax Information Services, LLC ("EQ"), and Experian Information Solutions, Inc. ("EXP"), (and together collectively, "Defendants") for violations under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA") and for violations under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"), states as follows:

### JURISDICTION

1.      This court has jurisdiction of the federal claim under 15 U.S.C. § 1692k(d) and 1681(p).

1

2.      Venue is proper because Plaintiff resides here, the acts and transactions occurred here, and IQD, MS, EQ, and EXP, transact business here.

3.      Under 28 U.S. Code § 1391(b)(2) a civil action may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

4.      Under 28 U.S. Code § 1391(d) when a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate state.

5.      Plaintiff resides in the city of Temple, a part of Bell County, Texas 76504.

6.      The acts that occurred giving rise to this complaint occurred while Plaintiff was in the city of Temple, a part of Bell County, Texas 76504, making the Waco Division a proper venue under 28 U.S. Code § 1391(b)(2).

7.      Defendant IQD, a Washington corporation headquartered in Everett, WA, practices as a debt collector throughout the country, including Texas.

8.      Defendant MS, a Texas corporation headquartered in Dallas, TX, practices as a debt collector throughout the country, including Texas.

9.      Defendants IQD and MS attempt to collect alleged debts throughout the state of Texas, including in Temple city and Bell County.

10.      Defendants IQD and MS have actual knowledge of where Plaintiff resided, and by attempting to collect from Plaintiff, purposefully availed themselves to the jurisdiction in which Plaintiff resided.

11.      Defendants IQD and MS have sufficient minimum contacts with this venue as the alleged injuries caused to Plaintiff were caused while Plaintiff was in Temple city and Bell County and Defendants attempt to collect alleged debts throughout the state of Texas.

12.     Defendants IQD and MS knowingly attempted to collect on debts allegedly incurred in Temple, Texas and thus have sufficient minimum contacts with this venue is additionally proper under 28 U.S. Code § 1391(b)(1).

13.     Defendant EQ, a Georgia corporation headquartered in Atlanta, GA, practices as a debt collector throughout the country, including Texas.

14.     Defendant EQ serves as a credit reporting agency of consumer credit throughout the state of Texas, including in Temple city and Bell County.

15.     Defendant EQ has actual knowledge of where Plaintiff resided, and by improperly reporting to Plaintiff's credit and providing Plaintiff with such an update, Defendant EQ purposefully availed itself to the jurisdiction in which Plaintiff resided.

16.     Defendant EQ has sufficient minimum contacts with this venue as the alleged injuries caused to Plaintiff were caused while Plaintiff was in Temple city and Bell County and Defendant attempts to collect alleged debts throughout the state of Texas.

17.     Defendant EQ knowingly reported information regarding a Plaintiff domiciled in Temple, Texas and thus has sufficient minimum contacts with this venue, making venue additionally proper under 28 U.S. Code § 1391(b)(1).

18.     Defendant EXP, an Ohio corporation headquartered in Costa Mesa, CA, practices as a debt collector throughout the country, including Texas.

19.     Defendant EXP serves as a credit reporting agency of consumer credit throughout the state of Texas, including in Temple city and Bell County.

20.     Defendant EXP has actual knowledge of where Plaintiff resided, and by improperly reporting to Plaintiff's credit and providing Plaintiff with such an update, Defendant EXP purposefully availed itself to the jurisdiction in which Plaintiff resided.

21.     Defendant EXP has sufficient minimum contacts with this venue as the alleged injuries caused to Plaintiff were caused while Plaintiff was in Temple city and Bell County and Defendant attempts to collect alleged debts throughout the state of Texas.

22.      Defendant EXP knowingly reported information regarding a Plaintiff domiciled in Temple, Texas and thus has sufficient minimum contacts with this venue, making venue additionally proper under 28 U.S. Code § 1391(b)(1).

## STANDING

23.     Plaintiff has a congressionally defined right to receive all communications from a debt collector free from any misrepresentations and false threats.

24.     IQD and MS's collection activities violated the FDCPA.

25.     Defendants' credit reporting and/or failure to properly dispute information violated the FCRA.

26.     Plaintiff has thus suffered an injury as a result of Defendants' conduct, giving rise to standing before this Court. Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1544 (2016), quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 580 (1992) (Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.); Bellwood v. Dwivedi, 895 F. 2d 1521, 1526-27 (7th Cir. 1990) ("Congress can create new substantive rights, such as a right to be free from misrepresentations, and if that right is invaded the holder of the right can sue without running afoul of Article III, even if he incurs no other injury[.]").

27.     "Without the protections of the FDCPA, Congress determined, the '[e]xisting laws and procedures for redressing these injuries are inadequate to protect consumers.'" Lane v. Bayview Loan Servicing, LLC, No. 15 C 10446, 2016 WL 3671467, at *3 (N.D. Ill. July 11, 2016)(quoting 15 U.S.C. § 1692(b)). Thus, a failure to honor a consumer's right under the FDCPA constitutes an injury in fact for Article III standing. See id. at *3 (holding that a consumer "has alleged a sufficiently

concrete injury because he alleges that [Defendant] denied her the right to information due to her under the FDCPA."); see also <u>Church v. Accretive Health, Inc.</u>, No. 15-15708, 2016 WL 3611543, at *3 (11th Cir. July 6, 2016) (holding that consumer's § 1692g claim was sufficiently concrete to satisfy injury-in-fact requirement).

28.    "[E]ven though actual monetary harm is a sufficient condition to show concrete harm, it is not a necessary condition." <u>Lane</u>, 2016 WL 3671467 at *4.

## PARTIES

29.    Plaintiff, Derrick Jarvis (hereafter "Plaintiff"), is a natural person currently residing in Bell County, in the state of Texas.

30.    Plaintiff is a "consumer" within the meaning of the FDCPA, 15 U.S.C. § 1692a(3).

31.    Plaintiff is a "consumer" as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

32.    Defendant IQD is a Washington corporation engaged in the business of collecting debts, using mails and telephone, in this state with its principal address at 1010 SE Everett Mall Way, Ste 100, Everett, WA 98208.

33.    Defendant MS is a Texas corporation engaged in the business of collecting debts, using mails and telephone, in this state with its principal address at 3911 S Walton Walker BLV, Dallas, TX 75265.

34.    IQD and MS are each engaged in the business of a collection agency, using the mails, telephone, and consumer collection agencies to collect consumer debts originally owed to others.

35.    IQD and MS regularly collect or attempt to collect defaulted consumer debts due or asserted to be due another, and are each a "debt collector" as defined in 15 U.S.C. § 1692a(6) of the FDCPA.

36.    Defendant EQ is a Georgia corporation with its principal place of business located at 1550 Peachtree St. NE #H-46, Atlanta, GA 30309.

37.     Defendant EXP is an Ohio corporation with its principal place of business located at 475 Anton Boulevard, Costa Mesa, CA 92626.

38.     Defendants IQD and MS are each a "furnisher of information" as that term is defined by the FCRA, 15 U.S.C. §1681s-2(b).

39.     EQ and EXP, are each a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. § 1681a(p). EQ and EXP regularly engage in the business of compiling and maintaining files on consumers on a nationwide basis for the purpose of furnishing consumer reports to third parties bearing on a consumer's credit worthiness, credit standing, or credit capacity, each of the following regarding consumers residing nationwide:

a. Public record information;

b. Credit account information from persons who furnish that information regularly and in the ordinary course of business.

## FACTUAL ALLEGATIONS

40.     Plaintiff is a natural person allegedly obligated to pay a debt asserted to be owed to creditors other than IQD and MS.

41.      On a date better known by IQD, IQD began to attempt to collect an alleged consumer debt from the Plaintiff.

42.     The alleged debt was said to be owed to Pecan Pointe TX.

43.     That this alleged debt would only have been incurred for a personal line of credit and would have been only for personal or family purposes.

44.     That this alleged account would have only been used for personal, family, or household purposes and would thus be a consumer debt.

45.     The reporting of the alleged debt is inaccurate in that it is incomplete to the extent that it is confusing to the Plaintiff.

46.     That IQD was reporting the collection account on Plaintiff's credit report with EQ and EXP.

47.     That IQD was voluntarily reporting the alleged collection account on Plaintiff's credit report with the credit reporting agencies.

48.     IQD's voluntary reporting to the credit reporting agencies is a "communication" under the FDCPA in connection with the collection of an alleged debt.

49.     On or about 07/27/2023, Plaintiff sent dispute letters via USPS mail to EQ and EXP notifying the account with IQD as disputed.

50.     These letters provided notice of the inaccurate reporting to EQ and EXP.

51.     Once EQ and EXP received notice of these letters, they were required to provide notice of such disputes and request for re-investigation to the furnisher, in this case IQD.

52.      EQ and EXP received the letters sent by Plaintiff.

53.      EQ and EXP transmitted notice of these disputes to IQD via an Automated Credit Dispute Verification form ("ACDV").

54.     IQD was required to investigate Plaintiff's dispute in full upon receipt of the ACDV, and by extension, notice of the inaccuracy.

55.     Alternatively, EQ and EXP negligently failed to send notice of the disputes to IQD after receiving notice of the disputes from Plaintiff.

56.     Alternatively, EQ and EXP willfully failed to send notice of the disputes to IQD after receiving notice of the disputes from Plaintiff.

57.     After receiving this notice, in any subsequent voluntary reporting, IQD must then include the dispute notation on said account.

58.     On or about 12/04/2023, Plaintiff received an updated credit file from EQ.

59.     That the credit report was updated on 11/18/2023 by IQD.

60.    That the updated 12/04/2023 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by EQ, and transmitted to IQD.

61.    Alternatively, that the updated 12/04/2023 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by EQ after EQ failed to notify IQD.

62.    EQ failed to properly reinvestigate Plaintiff's dispute.

63.    As a result of EQ's failure to reinvestigate, the updated 12/04/2023 credit report contained inaccurate information.

64.    EQ failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

65.    The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

66.    The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

67.    The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

68.    On or about 12/04/2023, Plaintiff received an updated credit file from EXP.

69.    That the credit report was updated on 11/18/2023 by IQD.

70.    That the updated 12/04/2023 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by EXP, and transmitted to IQD.

71.    Alternatively, that the updated 12/04/2023 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by EXP after EXP failed to notify IQD.

72.    EXP failed to properly reinvestigate Plaintiff's dispute.

73.    As a result of EXP's failure to reinvestigate, the updated 12/04/2023 credit report contained inaccurate information.

74.     EXP failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

75.     The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

76.     The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

77.     The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

78.     That the updated 12/04/2023 credit report did not contain updated marked as disputed information.

79.     The updated 12/04/2023 credit report contained inaccurate information.

80.     IQD failed to properly investigate or otherwise verify Plaintiff's dispute before voluntarily re-reporting the alleged debt.

81.     EQ and EXP failed to follow reasonable procedures to ensure maximum possible accuracy in the reporting of Plaintiff's credit.

82.     IQD must have voluntarily updated the Plaintiff's alleged account by communicating with EQ and EXP.

83.     That IQD furnished information to EQ and EXP regarding Plaintiff's account without notifying them the account had been disputed by consumer, even after receiving notice by EQ and EXP of the disputes.

84.     That IQD failed to update the account information and mark the account as disputed on the updated 12/04/2023 credit report after Plaintiff disputed the account on 07/27/2023 and was given notice of such by EQ and EXP.

85.     In the alternative, if IQD properly updated the account information and marked the account as disputed with EQ and EXP after receiving notification of disputes from Plaintiff, then EQ

and EXP failed to update the account information and mark the account as disputed on the updated 12/04/2023 credit report.

86.     That IQD never properly updated the account information or marked the account as disputed even after receiving information of the disputes from EQ and EXP.

87.     Alternatively, EQ and EXP never updated the account information and marked the account as disputed even after receiving information of the dispute remark from IQD in its subsequent voluntary reporting or via a response to an Automated Credit Dispute Verification ("ACDV") request.

88.      On a date better known by MS, MS began to attempt to collect an alleged consumer debt from the Plaintiff.

89.     That this alleged debt would only have been incurred for a personal line of credit and would have been only for personal or family purposes.

90.     That this alleged account would have only been used for personal, family, or household purposes and would thus be a consumer debt.

91.     The reporting of the alleged debt is inaccurate in that it is incomplete to the extent that it is confusing to the Plaintiff.

92.     That MS was reporting the collection account on Plaintiff's credit report with EQ and EXP.

93.     That MS was voluntarily reporting the alleged collection account on Plaintiff's credit report with the credit reporting agencies.

94.     MS's voluntary reporting to the credit reporting agencies is a "communication" under the FDCPA in connection with the collection of an alleged debt.

95.     On or about 07/27/2023, Plaintiff sent dispute letters via USPS mail to EQ and EXP notifying the account with MS as disputed.

96.     These letters provided notice of the inaccurate reporting to EQ and EXP.

97.    Once EQ and EXP received notice of these letters, they were required to provide notice of such disputes and request for re-investigation to the furnisher, in this case MS.

98.    EQ and EXP received the letters sent by Plaintiff.

99.    EQ and EXP transmitted notice of these disputes to MS via an Automated Credit Dispute Verification form ("ACDV").

100.    MS was required to investigate Plaintiff's dispute in full upon receipt of the ACDV, and by extension, notice of the inaccuracy.

101.    Alternatively, EQ and EXP negligently failed to send notice of the disputes to MS after receiving notice of the disputes from Plaintiff.

102.    Alternatively, EQ and EXP willfully failed to send notice of the disputes to MS after receiving notice of the disputes from Plaintiff.

103.    After receiving this notice, in any subsequent voluntary reporting, MS must then include the dispute notation on said account.

104.    On or about 12/04/2023, Plaintiff received an updated credit file from EQ.

105.    That the credit report was updated on 11/03/2023 by MS.

106.    That the updated 12/04/2023 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by EQ, and transmitted to MS.

107.    Alternatively, that the updated 12/04/2023 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by EQ after EQ failed to notify MS.

108.    EQ failed to properly reinvestigate Plaintiff's dispute.

109.    As a result of EQ's failure to reinvestigate, the updated 12/04/2023 credit report contained inaccurate information.

110.    EQ failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

111.    The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

112.    The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

113.    The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

114.    On or about 12/04/2023, Plaintiff received an updated credit file from EXP.

115.    That the credit report was updated on 11/02/2023 by MS.

116.    That the updated 12/04/2023 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by EXP, and transmitted to MS.

117.    Alternatively, that the updated 12/04/2023 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by EXP after EXP failed to notify MS.

118.    EXP failed to properly reinvestigate Plaintiff's dispute.

119.    As a result of EXP's failure to reinvestigate, the updated 12/04/2023 credit report contained inaccurate information.

120.    EXP failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

121.    The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

122.    The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

123.    The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

124.    That the updated 12/04/2023 credit report did not contain updated marked as disputed information.

125.     The updated 12/04/2023 credit report contained inaccurate information.

126.     MS failed to properly investigate or otherwise verify Plaintiff's dispute before voluntarily re-reporting the alleged debt.

127.     EQ and EXP failed to follow reasonable procedures to ensure maximum possible accuracy in the reporting of Plaintiff's credit.

128.     MS must have voluntarily updated the Plaintiff's alleged account by communicating with EQ and EXP.

129.     That MS furnished information to EQ and EXP regarding Plaintiff's account without notifying them the account had been disputed by consumer, even after receiving notice by EQ and EXP of the disputes.

130.     That MS failed to update the account information and mark the account as disputed on the updated 12/04/2023 credit report after Plaintiff disputed the account on 07/27/2023 and was given notice of such by EQ and EXP.

131.     In the alternative, if MS properly updated the account information and marked the account as disputed with EQ and EXP after receiving notification of disputes from Plaintiff, then EQ and EXP failed to update the account information and mark the account as disputed on the updated 12/04/2023 credit report.

132.     That MS never properly updated the account information or marked the account as disputed even after receiving information of the disputes from EQ and EXP.

133.     Alternatively, EQ and EXP never updated the account information and marked the account as disputed even after receiving information of the dispute remark from MS in its subsequent voluntary reporting or via a response to an Automated Credit Dispute Verification ("ACDV") request.

134.     All of IQD and MS's actions under the FDCPA complained of herein occurred within one year of the date of this Complaint.

135.    All of Defendants' actions under the FCRA complained of herein occurred within two years of the date of this Complaint.

136.    Plaintiff suffered injury-in-fact by being subjected to inaccurate, unfair, and abusive practices of the IQD, MS, and/or EQ and EXP.

137.    Plaintiff suffered actual harm by being the target of inaccurate credit reporting and/or misleading debt collection communications by IQD, MS, and/or EQ and EXP.

138.    Plaintiff has suffered actual harm due to credit denials caused by false credit reporting by IQD, MS, and/or EQ and EXP.

139.    Plaintiff has suffered actual harm based on his costs and time of repairing his credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, fear of personal and financial safety and security, and attorney's fees.

140.    Plaintiff's injury-in-fact is fairly traceable to the challenged representations of IQD, MS, and/or EQ and EXP.

141.    Plaintiff's injury-in-fact is likely to be redressed by a favorable decision in this Court.

**Count I: Violations Of § 1692e Of The FDCPA – False, Deceptive, Or Misleading Collection Actions**

142.    Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

143.    Section 1692e of the FDCPA prohibits a debt collector from using any false, deceptive, or misleading representation or means in connection with the collection of any debt.

144.    That because Plaintiff disputed the debt, IQD and MS, when choosing to contact the consumer reporting agencies, were obligated to inform them of the disputed status of the accounts. See Dixon v. RJM Acquisitions, L.L.C., 640 Fed. Appx. 793 (10th Cir. 2016) (Reversed summary judgment to the collection agency on the consumer's § 1692e(8) claim that after she had disputed a

debt, the agency had nevertheless reported the debt without disclosing the disputed. The consumer created a genuine fact issue given that she said during the recorded conversation: "I feel that all I owe is $20." A reasonable fact finder could treat the statement as a dispute of the alleged $102.99 debt.); Llewellyn v. Allstate Home Loans, Inc., 711 F.3d 1173 (10th Cir. 2013) "(We agree with the Eighth Circuit's interpretation of § 1692e(8) that a debt collector does not have an affirmative duty to notify [credit reporting agencies] that a consumer disputes the debt unless the debt collector knows of the dispute and elects to report to a CRA.")

145.    IQD and MS used deceptive and misleading tactics when it communicated personal credit information which was known or which should have been known to be false, including the failure to communicate the debts were disputed in violation of 15 U.S.C. §§ 1692e, 1692e(8). See Sayles v. Advanced Recovery Systems, Incorporated, 865 F.3d 246, 249 (5th Cir. 2017); Brady v. Credit Recovery Co., 160 F.3d 64 (1st Cir. 1998) (The plain language of the FDCPA requires debt collectors to communicate the disputed status of a debt if the debt collector knows or should know that the debt is disputed. This standard requires no notification by the consumer but depends on the debt collector's knowledge that a debt is disputed, regardless of how or when that knowledge is required.)

146.    IQD and MS's collection communications are to be interpreted under the "least sophisticated consumer" standard. See, Goswami v. Am. Collections Enter., Inc., 377 F.3d 488, 495 (5th Cir. 2004); Taylor v. Perrin, Landry, deLaunay & Durand, 103 F.3d 1232, 1236 (5th Cir.1997) (When deciding whether a debt collection letter violates the FDCPA, this court "must evaluate any potential deception in the letter under an unsophisticated or least sophisticated consumer standard.) See Also, Goswami, 377 F.3d at 495. (We must "assume that the plaintiff-debtor is neither shrewd nor experienced in dealing with creditors.")

147.    IQD and MS violated the Plaintiff's right not to be the target of misleading debt collection communications.

148.    IQD and MS violated the Plaintiff's right to a truthful and fair debt collection process.

149.    IQD and MS's communications with Plaintiff were deceptive and misleading.

150.    IQD and MS used unfair and unconscionable means to attempt to collect the alleged debt.

151.    IQD and MS's communications were designed to cause the debtor to suffer a harmful disadvantage in charting a course of action in response to IQD and MS's collection efforts.

152.    IQD and MS's failure to mark debts as disputed they know or should know are disputed violates § 1692e, 1692e(8) of the FDCPA.

153.    IQD and MS's conduct has caused Plaintiff to suffer damages including but not limited to a damaged credit score, the loss of time incurred by Plaintiff, and attorneys' fees paid for advice regarding his situation.

154.    Congress has found that "[a]busive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a).

155.    Here, Plaintiff has suffered an injury-in-fact in at least one of the manners contemplated by Congress when it passed the FDCPA because of IQD and MS's conduct.

156.    The FDCPA ensures that consumers are fully and truthfully apprised of the facts and of their rights, the act enables them to understand, make informed decisions about, and participate fully and meaningfully in the debt collection process. The purpose of the FDCPA is to provide information that helps consumers to choose intelligently. IQD and MS's false representations misled the Plaintiff in a manner that deprived him of his right to enjoy these benefits; these materially misleading statements trigger liability under section 1692e of the Act.

157.    Plaintiff seeks to end these violations of the FDCPA. Plaintiff has suffered actual damages including but not limited to, fear, stress, mental anguish, emotional stress and acute embarrassment.

158.    Defendants IQD and MS's violation of § 1692e of the FDCPA renders them liable for actual and statutory damages, costs, and reasonable attorneys' fees. See, 15 U.S.C. § 1692k.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Derrick Jarvis, prays that this Court:

A.    Declare that IQD and MS's debt collection actions violate the FDCPA;

B.    Enter judgment in favor of Plaintiff Derrick Jarvis, and against IQD and MS for actual and statutory damages, costs, and reasonable attorneys' fees as provided by § 1692k(a) of the FDCPA; and

C.    Grant other such further relief as deemed just and proper.

### Count II: Violations Of § 1692d Of The FDCPA – Harassment or Abuse

159.    Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

160.    Section 1692d prohibits any debt collector from engaging in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

161.    IQD and MS's communications with Plaintiff were meant to shame, embarrass, and harass Plaintiff by misrepresenting the alleged debts status.

162.    IQD and MS attempted to coerce Plaintiff into paying alleged debts his otherwise would not have paid by submitting false and inaccurate information to his credit report.

163.     IQD and MS could have no other purpose in doing this except to harm Plaintiff's reputation and deprive him of his ability to receive any type of credit line unless he paid the alleged debts.

164.     Defendants IQD and MS's violation of § 1692d of the FDCPA render them liable for actual and statutory damages, costs, and reasonable attorneys' fees. See, 15 U.S.C. § 1692k.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Derrick Jarvis, prays that this Court:

      A.     Declare that IQD and MS's debt collection actions violate the FDCPA;

      B.     Enter judgment in favor of Plaintiff Derrick Jarvis, and against IQD and MS for actual and statutory damages, costs, and reasonable attorneys' fees as provided by § 1692k(a) of the FDCPA; and

      C.     Grant other such further relief as deemed just and proper.

### COUNT III: Violations Of § 1692f Of The FDCPA – Misleading Representations & Unfair Practices

165.     Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

166.     Section 1692f prohibits the use of unfair and unconscionable means to collect a debt.

167.     IQD and MS attempted to collect debts by distributing false information that would negatively impact Plaintiff's rights as a consumer, as well as that would harm Plaintiff's financial health.

168.     IQD and MS used unfair and unconscionable means to attempt to collect the alleged debts.

169.     IQD and MS's violation of § 1692f of the FDCPA render them liable for actual and statutory damages, costs, and reasonable attorneys' fees. See, 15 U.S.C. § 1692k.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Derrick Jarvis, prays that this Court:

A.    Declare that IQD and MS's debt collection actions violate the FDCPA;

B.    Enter judgment in favor of Plaintiff Derrick Jarvis, and against IQD and MS, for actual and statutory damages, costs, and reasonable attorneys' fees as provided by § 1692k(a) of the FDCPA; and

C.    Grant other such further relief as deemed just and proper.

**Count IV: Violation Of 15 U.S.C. § 1681e(b) of the FCRA-Reinvestigations of Disputed Information**

170.    Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

171.    Plaintiff's credit report contained inaccurate information as it did not include a dispute notation even after Plaintiff disputed the accounts directly with EQ and EXP.

172.    EQ and EXP failed to follow reasonable procedures to keep Plaintiff's credit file accurate by reporting incomplete and inaccurate information which confused the Plaintiff ; EQ and EXP failed to send notice of the disputes received from Plaintiff to the furnishers as required, and EQ and  failed to update Plaintiff's credit file to ensure accuracy; EQ and EXP violated 15 U.S.C. 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning the Plaintiff.

173.    As a result of this conduct, action and inaction of EQ and EXP, the Plaintiff suffered damage by loss of credit, loss of the ability to purchase and benefit from a credit, the mental and emotional pain and anguish and the humiliation and embarrassment of credit denials.

174.    EQ and EXP's conduct, action, and inaction were willful, rendering them liable for statutory damages in the amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling the Plaintiff to recovery under 15 U.S.C. § 1681o.

175.    Due to EQ and EXP's conduct, Plaintiff is entitled to recovery costs and attorney's fees from EQ and EXP in the amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Derrick Jarvis, prays that this Court:

A.    Declare that EQ and EXP's credit reporting actions violate the FCRA;

B.    For EQ and EXP's willful violations, enter judgment in favor of Plaintiff Derrick Jarvis, and against EQ and EXP, for actual damages, statutory damages, costs, and reasonable attorneys' fees as provided by §1681n of the FCRA;

C.    For EQ and EXP's negligent violations, enter judgment in favor of Plaintiff Derrick Jarvis, and against EQ and EXP, for actual damages, statutory damages, costs, and reasonable attorneys' fees as provided by §1681n of the FCRA;

D.    Or, in the alternative, enter judgment in favor of Plaintiff Derrick Jarvis, and against EQ and EXP, for actual damages, costs, and reasonable attorneys' fees as provided by §1681o of the FCRA; and

E.    Grant other such further relief as deemed just and proper.

### Count V: Violation Of 15 U.S.C. § 1681i of the FCRA-Reinvestigations of Disputed Information

176.    Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

177.    EQ and EXP were reporting inaccurate and incomplete information on Plaintiff's credit report.

178.    EQ and EXP's inaccurate and incomplete reporting of Plaintiff's credit file is misleading to the extent that it can adversely impact Plaintiff's credit decisions.

179.    Plaintiff disputed the accuracy of his credit report directly with EQ and EXP via dispute letters sent through USPS.

180.    Defendants EQ and EXP violated 15 U.S.C. § 1681 after failing to conduct lawful reinvestigations of Plaintiff's disputes and provide the furnishers with notice of Plaintiff's dispute.

181.    EQ and EXP failed to report the status of the disputed accounts as disputed or delete the inaccuracy from Plaintiff's credit report after receiving notice of the disputes directly from Plaintiff.

182.    Defendants EQ and EXP willfully or negligently violated 15 U.S.C. § 1681i by failing to forward all relevant information to IQD and MS; by failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file; and by relying upon verification from a source they have reason to know is unreliable; and by publishing inaccurate information.

183.    As a result of this conduct, action and inaction of EQ and EXP, the Plaintiff suffered damage by loss of credit, loss of the ability to purchase and benefit from credit, and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

184.    EQ and EXP's conduct, action and inaction were willful, rendering them liable for actual or statutory damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, they were negligent entitling the Plaintiff to recovery actual damages under 15 U.S.C. § 1681o.

185.    The Plaintiff is entitled to recovery costs and attorney's fees from EQ and EXP in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Derrick Jarvis prays that this Court:

A.    Declare that EQ and EXP's credit reporting actions violate the FCRA;

B.     Enter judgment in favor of Plaintiff Derrick Jarvis, and against EQ and EXP, for actual damages, statutory damages, costs, and reasonable attorneys' fees as provided by §1681n of the FCRA;

C.     Or, in the alternative, enter judgment in favor of Plaintiff Derrick Jarvis, and against EQ and EXP, for actual damages, costs, and reasonable attorneys' fees as provided by §1681o of the FCRA; and

D.     Grant other such further relief as deemed just and proper.

### Count VI: Violation Of 15 U.S.C. § 1681s-2(B) of the FCRA- Duties of Furnishers of Information upon Notice of Dispute

186.     Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

187.     Defendants IQD and MS violated 15 U.S.C. § 1681s-2(b) by continuing to report the IQD and MS representations within Plaintiff's credit file with EQ and EXP without also including a notation that this debt was disputed; by failing to fully and properly investigate the Plaintiff's dispute of the IQD and MS representations; by failing to review all relevant information regarding same; by failing to accurately respond to IQD and MS; by failing to correctly report results of an accurate investigation to every other credit reporting agency; and by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the IQD and MS representations to the consumer reporting agencies.

188.     As a result of this conduct, action and inaction of IQD and MS, the Plaintiff suffered damage by loss of credit; loss of the ability to purchase and benefit from credit; and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

189.     Defendants IQD and MS's conduct, action and inaction were willful, rendering them liable for actual or statutory damages in an amount to be determined by the Court pursuant to 15

U.S.C. § 1681n. In the alternative, it was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

190.    Plaintiff is entitled to recover costs and attorney's fees from IQD and MS in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Derrick Jarvis, prays that this Court:

A.    Declare that IQD and MS's credit reporting actions violate the FCRA;

B.    Enter judgment in favor of Plaintiff Derrick Jarvis, and against IQD and MS for actual damages, statutory damages, costs, and reasonable attorneys' fees as provided by §1681n of the FCRA;

C.    Or, in the alternative, enter judgment in favor of Plaintiff Derrick Jarvis, and against IQD and MS, for actual damages, costs, and reasonable attorneys' fees as provided by §1681o of the FCRA; and

D.    Grant other such further relief as deemed just and proper.

## JURY DEMAND

191.    Plaintiff demands a trial by jury on all Counts so triable.

Dated: October 31, 2024

Respectfully Submitted,

**HALVORSEN KLOTE**

By:    /s/Joel Halvorsen

Joel S. Halvorsen, #67032
680 Craig Road, Suite 104
St. Louis, MO  63141
P: (314) 451-1314
F: (314) 787-4323
joel@hklawstl.com
*Attorneys for Plaintiff*